736 S.W.2d 668 (1987)
Melvin Edward BUTLER, Appellant,
v.
The STATE of Texas, Appellee.
No. 1063-83.
Court of Criminal Appeals of Texas, En Banc.
September 16, 1987.
*669 Robert Udashen, Gary A. Udashen, Dallas, for appellant.
Henry Wade, Dist. Atty., and Jeffrey B. Keck, Jeff Hines and Barbara Gibbs, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.
Before the court en banc.

OPINION ON APPELLANT'S PETITITION FOR DISCRETIONARY REVIEW
McCORMICK, Judge.
Appellant was convicted of murder. His punishment, enhanced by a jury finding of two prior final convictions, was automatically assessed at life in the Texas Department of Corrections. This Court granted appellant's petition on a single ground: whether the Court of Appeals erred in affirming the trial court's denial of appellant's amended motion for new trial which was based upon appellant's contention that the prosecutor failed to disclose certain exculpatory evidence, a knife thought to be the murder weapon and test results run on that knife, in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We affirm.
The Court of Appeals set out the facts of the case as follows:
"Following appellant's conviction, his attorney learned that the State's Attorney had received information before trial that police had discovered a knife in connection with the case. The knife was supposedly found on the roof of a building near the scene of the crime but bore no discernible fingerprints. The State's Attorney also had been told by his medical witness that blood found on the knife matched the blood of the deceased.
"The chief witness for the State, Mary Louise Johnson, long time girlfriend of appellant, testified that when the deceased and appellant began a fight in her apartment one night she immediately fled outside and saw nothing that occurred inside, but thereafter did see the deceased fleeing the apartment and being pursued by appellant who said, `Nigger, I will kill you.' Both the deceased and appellant then disappeared behind the apartment building. Deceased was later found on the ground behind the apartment building bleeding to death from a stab wound in the chest. Johnson testified she saw no knife that night and never saw appellant with any weapon in his hands. No blood was found inside her apartment. She said she did not initially tell the police the true story, because appellant told her to lie if asked because he did not want to go back to the penitentiary.
"The only other witness called by the State for its case in chief was the Dallas County Medical Examiner, Dr. Charles Petty. Dr. Petty testified to two wounds on the deceased's body: (1) an incised wound on the tip of the fourth finger, left hand, of a type which occurs when a person attempts to ward off attack by a sharp instrument; and (2) a stab wound on the back, just inside the left shoulder blade, deep enough to have opened the aorta and caused death. The latter wound was about one half inch in length and had one blunt or dull edge and one sharp edge, such as would be made by a kitchen knife.
"Testifying in his own defense, appellant admitted he got into a fight with deceased inside Johnson's apartment and defended himself with a kitchen knife which he had taken shortly before from others engaged in a fight in a neighboring apartment. Although he did hit or cut the deceased with the knife and got blood on his own hands, he did not know the location of any wounds on the deceased's body. He denied following the deceased from the apartment or threatening *670 to kill him. Appellant admitted that after others discovered the deceased near death from a stab wound, Mary Johnson's sister, Shirley, took the knife from appellant and threw it on the roof of the apartment building.
"The only fact witness called by appellant was Henry Johnson, no relation to the State's witness, Mary Louise Johnson. Henry Johnson testified that after the homicide Mary Louise Johnson lived at his home in the same room with the appellant for over a month and did not appear to be afraid of appellant.
"Appellant's Brady motion generally sought evidence or any information known to the State's Attorney which would be favorable to appellant on the issue of his guilt or innocence, but did not specifically mention the murder weapon. It did specifically seek any exculpatory evidence tending to affect adversely the credibility of any State's witness and exculpatory evidence resulting from any scientific test conducted in the case." Butler v. State, 663 S.W.2d 492 (Tex.App.Dallas, 1983).
In light of the facts set out above, we turn now to appellant's contention that his constitutional rights were violated by the withholding of Brady material by the prosecution. The Supreme Court in Brady held that prosecution suppression of evidence favorable to a criminal defendant violates due process where the defendant requests the evidence and such evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. A conviction must be reversed if the prosecution actively suppresses evidence or negligently or inadvertently fails to disclose evidence which may exonerate the defendant. Brady v. Maryland, supra; Crutcher v. State, 481 S.W.2d 113 (Tex.Cr.App.1972).
In determining whether reversible error has occurred, the Court set out three factors for analysis of a Brady question. Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). Those factors are (1) the suppression of such evidence by the prosecution after a request by the defense; (2) the evidence's favorable character for the defense, and (3) the materiality of the evidence. This Court has since adopted the test. Coe v. State, 683 S.W.2d 431 (Tex.Cr.App.1984); Crawford v. State, 617 S.W.2d 925 (Tex.Cr.App.1980).
It is undisputed that appellant made a timely pretrial request for disclosure of all exculpatory evidence, reiterating that request throughout the proceedings. However, appellant never specifically requested disclosure of any alleged murder weapon; the only specific request being for the "results of any scientific or other tests conducted in this case." Where a general request is made, error only exists if there is a showing on appeal that undisclosed evidence exists which creates a reasonable doubt that did not otherwise exist. Green v. State, 587 S.W.2d 167 (Tex.Cr.App.1979). The instrumentality of the offense was a weapon with one sharp and one blunt edge, such as a kitchen knife. By appellant's own testimony, he admitted bringing such a knife into the apartment when the fight with deceased began and admitted cutting deceased with the knife. The kitchen knife allegedly discovered on the rooftop more clearly may be described as inculpatory, not exculpatory evidence of the murder. We hold there is not a showing that disclosure of the knife itself would have created a reasonable doubt of appellant's guilt or bolstered the defensive theory of self-defense.
The nondisclosure of test results run on the knife presents a closer question. Appellant made a specific request for disclosure of any such results. Where a defendant is diligent and makes a specific and relevant request for Brady information, failure of the prosecution to respond is reversible error if such evidence might have had an effect on the outcome of the trial. Ex parte Turner, 545 S.W.2d 470 (Tex.Cr.App.1977); United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).
Tests run on the knife showed that the blood on the blade matched the deceased's blood type and that no discernible fingerprints could be lifted from the weapon. *671 The State does not dispute that it Knew of the results of the tests, but argues that the information contained therein was not exculpatory in nature. We agree.
Whether the prosecutor in a criminal case must disclose all evidence in his possession favorable to the accused to comply with due process depends on many factors, and a case by case judgment must often be made. Means v. State, 429 S.W.2d 490 (Tex.Cr.App.1968). Here, it is not clear that the information suppressed was of a character favorable to the accused. No discernable fingerprints were lifted from the knife and the blood sample taken from the knife showed a blood type matching that of the deceased. While the matching blood samples tend to show the knife was used in the commission of the offense, there is no evidence except appellant's own testimony to connect the knife to this crime. Moreover, we do not consider negative fingerprint test results to be exculpatory in nature. See Crawford v. State, supra.
As to appellant's argument that production of the information at issue might have enabled him to impeach the State's only fact witness, the record simply does not support the contention. We are not concerned here with a case where the prosecution has withheld prior inconsistent statements which could be used for impeachment purposes, as in Crutcher v. State, supra. In fact, appellant was aware that Mary Louise Johnson had first told the police another version of the events surrounding the killing and, on cross-examination of Johnson, defense counsel developed the point for the jury to consider. That the jury believed Johnson and not appellant even after counsel ably pointed out her inconsistent statement belies appellant's argument that he "might" have impeached this witness, creating a reasonable doubt in the minds of the jury. Appellant was certainly free to bring in his own rebuttal witnesses for impeachment purposes, but he chose not to do so. We are constrained from finding the suppressed information favorable to appellant.
Neither can it be said that the requested information was material. In Agurs, the Supreme Court held that (1) the mere possibility that an item of undisclosed information might have helped the defense or might have affected the outcome of the trial does not establish "materiality" in the constitutional sense, and (2) the omitted evidence must have been such as would create a reasonable doubt about the defendant's guilt. Crawford v. State, supra. Taken in this context, we agree with the Court of Appeals that the nondisclosed information was not material in the constitutional sense. The lack of fingerprints on the knife and the positive results of the blood tests do not pertain in any meaningful way to defense strategy helpful to establishing appellant's innocence. Appellant argues that he "might" have pursued a different defensive theory, but does not share that theory with the Court. Even if a different defensive theory had been chosen, the lack of appellant's fingerprints on the alleged murder weapon does not tend to prove that someone other than appellant had wielded the knife. Assuming the hearsay report that the knife was found on the roof could be confirmed, the relevance of such information is not significant enough likely to change the outcome of the trial. Appellant was seen fighting with the deceased shortly before the deceased was discovered bleeding to death. The only eyewitness called by either side testified that appellant threatened to kill the deceased and chased the deceased around the corner of the building, out of sight, where the deceased was subsequently found. Since appellant's pursuit of the deceased is incongruous with his defensive theory, it is understandable that his testimony ended the fight at the apartment door and had another person throw the alleged murder weapon onto the roof. However, it is for the trier of fact to determine the credibility of each witness, and in spite of Johnson's inconsistent statements, or perhaps because of her explanation for them, the jury chose to believe Johnson rather than the appellant. It is not conceivable that, given the state of the evidence, production of the knife and of the tests run on the knife *672 would have had a material effect on the outcome of the trial. We, therefore, find that the omitted information was neither favorable nor material to the defendant so as to create a reasonable doubt about the defendant's guilt in this case. Agurs, supra.
We find further that the omitted information would not have materially affected the determination of appellant's punishment, especially as punishment was automatically assessed according to statute. V.T.C.A., Penal Code, Section 12.42.
Failure to effectuate discovery will not result in reversible error unless it can be shown that the evidence withheld would have affected the outcome of the trial in the defendant's favor. Quinones v. State, 592 S.W.2d 933 (Tex.Cr.App.1980). Since it cannot be concluded that the information omitted would have materially affected determination of the appellant's guilt or punishment, failure to disclose such evidence was not so prejudicial as to warrant reversal on the basis of denial of due process under Brady. Means v. State, 429 S.W.2d 490 (Tex.Cr.App.1968). We, therefore, hold that appellant was not deprived of a fair trial due to the State's omission, and there is no error. Appellant's ground of review is overruled.[1]
The judgment of the Court of Appeals is affirmed.
ONION, J., concurs in result.
CLINTON, Judge, concurring.
The opinion of the Court is internally inconsistent in stating applicable tests for determining reversible error when Brady v. Maryland material is not disclosed by the State.[1] Compare stated test on page 670 with statements at pages 670, 671 and 671, 672.
Brady is bottomed on the fact that accused requested particular material. A careful reading of United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), will reveal what the Supreme Court decided there, viz:
"[W]hether the prosecutor has any constitutional duty to volunteer exculpatory matter to the defense, and if so, what standard of materiality gives rise to that duty."
Id., at 107, S.Ct. at 2399. Thus when a request for discovery is specific the test is prescribed by Brady v. Maryland; when there is merely a general request or none at all the test is in Agurs. The court of appeals failed to make such a delineation.
This Court recognized the difference in Frank v. State, 558 S.W.2d 12 (Tex.Cr.App. 1977), shortly after Agurs was handed down. However, in Stone v. State, 583 S.W.2d 410 (Tex.Cr.App.1979), it did not, and erroneously applied Agurs; though accused requested particular reports which a Court panel found "may have aided the defense," it concluded that "the omissions are not so material as to create `a reasonable doubt that did not otherwise exist.' United States v. Agurs, supra." Id., at 415. See also Crawford v. State, 617 S.W.2d 925 (Tex.Cr.App.1980).
Similarly, in this cause the opinion of the Court notices this is a general Brady motion containing also a specific request, but in addressing each it indiscriminately mixes bits of Brady with pieces of Agurs. For example, to the specific request for test results, opinion, at 670, it wrongly applies the "materiality" test and "reasonable doubt" standard of Agurs, at pp. 671, 672.[2]
*673 While the ultimate result may be correct, we should sort out, delineate and apply proper tests and standards to reach it. This cause presents a practical opportunity to do so. Because the Court leaves them in disarray, I join only its judgment.
TEAGUE and MILLER, JJ., join this opinion.
NOTES
[1] We are not unaware of the Supreme Court's recent pronouncements in U.S. v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), but such decision does not impact the result reached here.
[1] Brady v. Maryland, 373 U.S. 83, at 87, 83 S.Ct. 1194, at 1196-1197, 10 L.Ed.2d 215 (1963): "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (All emphasis is mine throughout unless otherwise noted.) Moore v. Illinois, 408 U.S. 786, at 794, 92 S.Ct. 2562, at 2568, 33 L.Ed.2d 706 (1972), merely restates the same test; see page 3 of opinion of the Court.
[2] To be noted is that those are constitutional tests and standards to assay violations of due process when sans request the prosecution fails voluntarily to disclose evidence. They are not intended to govern construction of statutory discovery provisions, as the Supreme Court expressly pointed out in Agurs, supra, 427 U.S. at 107, 96 S.Ct., at 2399. See Quinones v. State, 592 S.W.2d 933 (Tex.Cr.App.1980) (Roberts, J., dissenting, at 947). Here, the trial court granted discovery requested by motion. Our concern is solely with noncompliance by prosecution. That is controlled by Brady not Agurs.