Patrick Lawrence
**O'RARDEN, Appellant,**

v.

**The STATE of Texas, Appellee**

No. 05-88-00513-CR.

Court of Appeals of Texas,
Dallas.

Aug. 29, 1989.

Discretionary Review Refused
Dec. 20, 1989.

Jeff L. Pierce, Plano, for appellant.

George Roland, McKinney, for appellee.

Before STEWART, ROWE and OVARD, JJ.

## ON MOTION FOR REHEARING

ROWE, Justice.

After a jury trial, Patrick Lawrence O'Rarden was convicted of aggravated sexual assault against Rachael, the minor daughter of a divorcee he had been dating. The jury sentenced O'Rarden to thirty years' confinement. In our prior unpublished opinion, we held that the child victim was competent to testify but that the trial court erred by denying O'Rarden's request to publish to the jury a video tape. Accordingly, we sustained O'Rarden's eighth point of error and reversed the trial court's judgment. On the State's motion for rehearing, we withdraw that portion of our prior opinion sustaining O'Rarden's eighth point of error. We do not otherwise rule on this point, however, because we find alternatively that we must reverse the trial court's judgment and remand this case for a new trial based upon O'Rarden's third and fourth points of error.

In his third and fourth points of error, O'Rarden complains that the trial court erred in denying his motion for continuance and motion for mistrial based upon the discovery of suppressed favorable evidence. Prior to trial, O'Rarden filed a motion to produce exculpatory evidence which the trial court granted. Pursuant thereto, the prosecuting attorney was required to review all evidence in his file or brought to his attention and to make available to O'Rarden any evidence favorable to him. The trial court also granted two motions for discovery which required the State to produce to O'Rarden the following material:

(1) Any and all evidence of any exculpatory nature, whether in writing or orally, that would tend to form the basis of a defense for the Defendant in this case or to excuse the action of the Defendant in this case or to mitigate in any respect the action of the Defendant in this case.

(2) Any and all reports by any expert witness, who has examined any evidence connected with this case and

any other report by a physical or trace evidence analyst.

(3) The names of all expert witnesses that the State is aware of that have interviewed either the complaining witness, Rachael _____; or the mother of the complaining witness, Christine _____; or the father of the complaining witness, Thomas _____; or the outcry witness, Becky Bradford, concerning any aspect that is either the subject of the indictment or the subject of any extraneous offense the State intends to introduce at the time of trial.

(4) The list of names of all expert witnesses that have interviewed either the complaining witness, Rachael _____; or the mother of the complaining witness, Christine _____; or the father of the complaining witness, Thomas _____; or the outcry witness, Becky Bradford, concerning the events set forth in this indictment or any extraneous offense that the State intends to use at the time of trial, whether or not the State intends to call such expert witness at the time of trial.

On the first day of trial, O'Rarden received for the first time the file of Donna Jones, the worker in the Department of Human Resources (DHR) who investigated the abuse allegations.[1] In reviewing this file, O'Rarden discovered a reference to a medical examination of Rachael by Dr. Carolyn Ashworth. The reference indicated that Dr. Ashworth had examined Rachael and concluded that there were no symptoms of sexual abuse.

Before any witnesses were questioned, O'Rarden orally moved for a continuance based on the discovery of this suppressed evidence so that he could locate and question Dr. Ashworth. The prosecutor replied that he had assumed O'Rarden had received everything from the prior prosecutor who handled the case. He stated that he understood that Dr. Ashworth was Rachael's pediatrician and that she had examined Rachael two days after the date of the offense. He then provided O'Rarden with Dr. Ashworth's address from a list of names and addresses contained in the State's file. After granting a brief recess to allow O'Rarden to subpoena Dr. Ashworth for the next morning, the trial court denied the motion for continuance.

The State then proceeded with its case in chief which consisted solely of Rachael's testimony. After the State rested, the trial court called upon the defense to proceed with its case in chief. In an attempt to impeach Rachael, the defense called Jones to testify. During its examination, the defense questioned Jones about the statements Rachael made to her on the date of the offense in an effort to show inconsistencies. The defense also examined Jones concerning other abuse allegations against O'Rarden concerning Rachael's sister, Rebecca. These allegations had been dismissed as unfounded. In addition, the defense began to develop evidence that both girls had been coached by their father and babysitter.[2] When court recessed that evening, the defense had not completed its examination of Jones.

The next morning, the trial court allowed the defense to interrupt its examination of Jones to question Dr. Ashworth. Dr. Ashworth's testimony revealed that in addition to being a pediatrician, she was an expert in the area of child sexual abuse and had testified in numerous cases. She testified that she had been Rachael's regular pediatrician since birth. When she heard of the abuse allegations, her office convinced Rachael's mother to bring Rachael in for an examination under the pretext of a routine check-up. Her examination revealed no physical signs of sexual abuse. When Ashworth questioned Rachael about the abuse allegations, Rachael denied any "bad touch-

---

1. O'Rarden had subpoenaed this file, and it was produced on the first day of trial. The entire first day of trial was spent on the voir dire of the jury panel. Due to the prosecutor's illness, the trial court granted a one day recess after which trial resumed.

2. The defense later showed that the girls' father instigated the investigation shortly after the girls, their mother, and O'Rarden had gone on a vacation together over a Thanksgiving weekend.

ing." From this examination, Dr. Ashworth stated that she was satisfied that no abuse had occurred.

Later in the trial, O'Rarden moved for a mistrial based on the suppression of the exculpatory evidence, contending that the timely disclosure of such evidence would have significantly changed his trial strategy. In particular, O'Rarden stated that he would not have presented the same theory of defense and would not have called Jones to testify about the extraneous abuse allegations concerning Rachael's sister, Rebecca. The trial court denied this motion.

■ Regardless of the good faith or bad faith of the prosecution, the prosecution's suppression of evidence favorable to the defendant violates due process where such evidence is material either to guilt or to punishment. *United States v. Bagley*, 473 U.S. 667, 669, 105 S.Ct. 3375, 3376–77, 87 L.Ed.2d 481 (1985); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963); *Ex parte Adams*, 768 S.W.2d 281, 288 (Tex.Crim.App.1989). This rule can be broken down into three distinct factors: 1) the suppression of evidence by the prosecution;[3] 2) the favorable character of such evidence for the defendant; and 3) the materiality of the evidence. *Butler v. State*, 736 S.W.2d 668, 670 (Tex.Crim. App.1987). We must reverse the conviction only if all three factors exist. *Id.*

■ The first factor exists if the prosecution actively suppresses evidence or negligently or inadvertently fails to disclose it. *See Butler*, 736 S.W.2d at 670. The "prosecution" includes all members of the "prosecution team"—both investigative and prosecutorial—and no distinction is drawn between different agencies under the same government. *United States v. Antone*, 603 F.2d 566, 569 (5th Cir.1979); *Adams*, 768 S.W.2d at 292. In this case, the prosecutor produced Dr. Ashworth's name and address from a list in his file which included the names and addresses of other persons with knowledge of the case. The prosecutor also stated his understanding of Dr. Ashworth's connection with this case. Moreover, Jones's file contained a specific reference to Dr. Ashworth's examination of Rachael. Jones also testified that she understood that Dr. Ashworth had found no signs of sexual abuse. Under the facts of this case, it is clear that Jones, in her capacity as a DHR investigator, was operating as an agent of law enforcement and as a member of the "prosecution team." *Cf. Cates v. State*, 776 S.W.2d 170, 172–173 (Tex.Crim.App., 1989) (DHR investigator required to give *Miranda* warnings unless acting in purely civil capacity). We conclude that the prosecution suppressed the evidence of Dr. Ashworth's examination of Rachael.

We must next determine whether such evidence was favorable to the defendant. Impeachment evidence, as well as exculpatory evidence, falls within the definition of favorable evidence because, if disclosed and used effectively, it may make the difference between conviction and acquittal. *Bagley*, 473 U.S. at 676, 105 S.Ct. at 3380; *see Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). In this case, Dr. Ashworth's testimony was clearly favorable to O'Rarden. First, she found no physical signs of sexual abuse two days after the alleged offense. Second, she testified that Rachael denied any "bad touching." This prior statement by Rachael was inconsistent both with her trial testimony and with her prior statements to Jones. We conclude that the evidence of Dr. Ashworth's examination was favorable to O'Rarden.

Our next inquiry is whether such evidence is material. The evidence is material only if there is a reasonable probability that, had it been disclosed to the defense, the result of the proceeding would have been different. *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383; *Adams*, 768 S.W.2d at 291. A "reasonable probability" is a proba-

---

**3.** Until recently, courts treated the prosecution's duty to disclose differently in situations where the defendant had made a specific pretrial request for certain evidence as opposed to situations where no such request was made. *See*

*United States v. Agurs*, 427 U.S. 97, 106–07, 96 S.Ct. 2392, 2398–99, 49 L.Ed.2d 342 (1976). We have now rejected this distinction in favor of a uniform approach. *See Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383; *Adams*, 768 S.W.2d at 289.

bility sufficient to undermine confidence in the outcome of the trial. *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383; *Adams,* 768 S.W.2d at 291. Since the State's only witness was Rachael, the credibility and reliability of her testimony was a critical issue at trial. Dr. Ashworth's testimony clearly eroded both these factors. If this evidence had remained secret throughout the trial, we would have no doubt that it was material.

Since this evidence was disclosed during the course of trial, however, we must assess whether there is a reasonable probability that the timing of the disclosure adversely affected the defense's preparation or presentation of its case. *See Bagley,* 473 U.S. at 683, 105 S.Ct. at 3384. Prior to trial, O'Rarden specifically requested certain favorable evidence, including information on expert witnesses. Although the evidence of Dr. Ashworth's examination did not fall within the strictest construction of O'Rarden's requests, the requests certainly put the prosecution on notice of the value O'Rarden placed on such evidence. The more specifically the defense requests certain evidence, the more reasonable it is for the defense to assume from the nondisclosure that such evidence does not exist and to make pretrial and trial decisions on that basis. *Bagley,* 473 U.S. at 682–83, 105 S.Ct. at 3383–84.

At trial, O'Rarden raised this contention in his motion for mistrial and specifically described how the delayed disclosure affected his defense strategy. In particular, O'Rarden asserted that he would not have called Jones to testify and would not have questioned her about the abuse allegations concerning Rebecca. From the record, it is clear that Dr. Ashworth's testimony was more favorable to O'Rarden than Jones's testimony. When O'Rarden called Jones to testify, he had not yet had an opportunity to thoroughly investigate Dr. Ashworth's connection to this case. At the time, Jones was the only available expert witness who might have been able to impeach Rachael's testimony. Our review of the totality of the record convinces us that such a change in strategy would have been a reasonable response to the timely disclosure of the

suppressed evidence. We hold that there is a probability sufficient to undermine our confidence in the outcome of the trial that the timing of the disclosure adversely affected O'Rarden's preparation and presentation of his case.

Likewise, we conclude that had the prosecution timely disclosed the suppressed evidence to the defense, there is a reasonable probability that the result of the proceeding would have been different. Viewed in its entirety, Jones's testimony bolstered Rachael's rather than impeaching it. As a member of the prosecution team, Jones was certainly an adverse witness. Moreover, it seems clear from her testimony that she firmly believed that O'Rarden had abused Rachael, based at least in part on the prior allegations with respect to her sister. Dr. Ashworth, on the other hand, was relatively unbiased. We conclude that if Jones had not testified, the totality of the evidence presented at trial would have shifted significantly in O'Rarden's favor. Accordingly, we conclude that there is a probability sufficient to undermine our confidence in the outcome of the trial that, had the prosecution timely disclosed the favorable evidence, the result of the proceeding would have been different. We sustain O'Rarden's third and fourth points of error.

■ The State argues that O'Rarden failed to properly preserve error by filing a sworn written motion for continuance. While we agree that, as a general rule, a motion for continuance must be in writing and sworn to by a person having personal knowledge of the facts relied upon for the continuance, this rule is not absolute. When a party makes an oral motion for continuance, such motion is not a statutory one but, rather, is addressed to the equitable powers of the trial court. *Darty v. State,* 149 Tex.Crim. 256, 193 S.W.2d 195, 195 (1946); *Daigle v. State,* 658 S.W.2d 774, 775 (Tex.App.—Beaumont 1983, no pet.). Such an oral motion for continuance is reviewable only for abuse of discretion. *Daigle,* 658 S.W.2d at 775; *see Darty,* 193 S.W.2d at 195. When the circumstances surrounding the trial court's denial of an oral motion for continuance amount to a

denial of the rudiments of due process required under both our State and federal constitutions, such denial is subject to appellate review. *See Brown v. State,* 630 S.W.2d 876, 880 (Tex.App.—Fort Worth 1982, no pet.).

■ In this case, O'Rarden's oral motion was based on his discovery after trial commenced of certain favorable evidence which the prosecution had suppressed. The prosecution's duty to disclose evidence favorable to the accused is based on the due process requirement of a fair trial. *Bagley,* 473 U.S. at 675, 105 S.Ct. at 3379–80. By denying his motion for continuance, the trial court denied O'Rarden the opportunity to adequately determine the exact nature of the favorable evidence and to prepare his case accordingly. As such, the denial of his oral motion for continuance was tantamount to a denial of a fair trial.

In order to preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion stating the specific grounds of his complaint. *See* TEX.R.APP.P. 52(a). A request, objection, or motion is sufficient to preserve a complaint for appellate review if the appellate record shows that the trial judge and opposing counsel were apprised of the substance of the appellant's complaint. *See Thomas v. State,* 723 S.W.2d 696, 700–01 (Tex.Crim.App.1986); *Trifovesti v. State,* 759 S.W.2d 507, 508 (Tex.App.—Dallas 1988, pet. ref'd). From our record, it is clear that both the trial judge and the prosecutor were aware of the substance of O'Rarden's complaint. Under the particular facts of this case, we think that the oral motion for continuance was sufficient to preserve error with respect to the prosecution's suppression of favorable evidence.

■ The State also contends that O'Rarden's motion for mistrial was untimely since it was not urged immediately after Dr. Ashworth's testified. *Thompson v. State,* 691 S.W.2d 627, 635 (Tex.Crim.App. 1985), is cited for the proposition that, to be timely, an objection must be made as soon as the ground becomes apparent. The issue in *Thompson,* however, involved the alleged improper admission of certain evidence. When improper evidence is offered, an objection must be promptly urged in order to give the trial court an adequate opportunity to grant any appropriate relief, such as excluding the evidence and giving the jury any necessary instructions to disregard. This is likewise true of various other trial errors.

O'Rarden urged the trial court to grant a continuance promptly after discovering some of the suppressed evidence. This motion apprised the trial court of O'Rarden's complaint and afforded the court an opportunity to grant appropriate relief at that time. O'Rarden's later motion for mistrial, rather than being a predicate for other error, merely served as a reminder to the trial court of the prior complaint, coupled with an updated request for the relief that had then become appropriate. As we view it, O'Rarden's motion for mistrial was a commendable follow-up attempt, made after the extent of actual injury became obvious, to have the trial court cure the initial wrong. Due to the nature of a mistrial, the effect of granting such relief would have been no different had O'Rarden urged it earlier. Under the circumstances, a more timely motion was not a prerequisite for preserving the error in question.

We overrule the State's motion for rehearing. This Court's prior judgment reversing the judgment of the trial court and remanding this cause for a new trial remains in full force and effect.

OVARD, J., dissents.

OVARD, Justice, dissenting.

I respectfully dissent. The majority reverses and remands this case based upon O'Rarden's third and fourth points of error. An analysis of these points shows that the trial court did not err.

In point of error three, O'Rarden argues that the trial court erred in overruling the oral motion for continuance that he made after discovering exculpatory evidence. He asserts that he was denied due process of law. As a general rule, an application for continuance is left to the sound discretion of the trial court, and unless it appears

that the court abused its discretion with respect thereto, no error can be shown. *Williams v. State*, 145 Tex.Crim. 406, 168 S.W.2d 261, 263 (App.1943). A criminal action may be continued on the *written* motion of either party. TEX.CODE CRIM. PROC.ANN. art. 29.03, (Vernon 1987); *Minx v. State*, 615 S.W.2d 748, 749 (Tex. Crim.App.1981). Texas Code of Criminal Procedure article 29.08 provides that all motions for continuance must be sworn to by a person having personal knowledge of the facts relied upon for the continuance. *Minx*, 615 S.W.2d at 749. Where the motion for continuance is neither in writing nor sworn, nothing is presented for review. *Minx*, 615 S.W.2d at 749; *Lopez v. State*, 535 S.W.2d 643, 650 (Tex.Crim.App.1976).

Prior to trial, O'Rarden filed motions requesting any exculpatory evidence. These motions were granted by the trial court prior to the first day of trial. On the first day of trial, during jury selection, O'Rarden read in a DHR file that when Dr. Ashworth conducted a physical examination of the complainant two days after the alleged offense, the complainant showed no symptoms of sexual abuse. O'Rarden then presented an *oral* motion for continuance, prior to any opening statement or presentation of any evidence. The trial court overruled his oral motion for continuance. Additionally, during the trial, Dr. Ashworth testified that the complainant had denied any "bad touching." Dr. Ashworth concluded that no sexual abuse had occurred. The record showed that the State previously was aware of Dr. Ashworth's physical examination, finding no symptoms of sexual abuse. There was no showing that the State had previous knowledge of complainant's denial of "bad touching" or Dr. Ashworth's conclusion of the absence of sexual abuse. The jury received Dr. Ashworth's testimony concerning these exculpatory matters. O'Rarden made no motions or requests at the conclusion of Dr. Ashworth's testimony. He now argues that the late disclosure of the doctor's findings caused O'Rarden harm by adversely affecting his trial strategy.

O'Rarden's oral motion for continuance did not properly preserve error for this Court's review. A motion for continuance is required to be in writing and must be sworn. TEX.CODE CRIM.PROC.ANN. art. 29.03 and art. 29.06 (Vernon 1987). These requirements apply whether a motion for continuance is made before or after the trial commences. *Allen v. State*, 505 S.W.2d 923, 924 (Tex.Crim.App.1974); *Stubbs v. State*, 457 S.W.2d 563, 564 (Tex. Crim.App.1970); *see Juarez v. State*, 439 S.W.2d 346, 348 (Tex.Crim.App.1969). There was no abuse of discretion by the trial court.

The majority relies on several cases for the proposition that suppression of Dr. Ashworth's exculpatory evidence by the State denies O'Rarden due process and results in reversible error. They base their reasoning on factors set out in *Butler v. State*, 736 S.W.2d 668, 670 (Tex.Crim.App. 1987). They attempt to reinforce this position by citing *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963); *Ex Parte Adams*, 768 S.W.2d 281 (Tex.Crim.App.1989). These cases are readily distinguishable because, in each case, the exculpatory evidence was discovered after the trial was completed. In this case, the exculpatory evidence was disclosed to the defense on the first day of the trial and during the trial.

When exculpatory evidence is discovered prior to or during the trial, a different situation exists, particularly, as in this case, where the jury actually receives the exculpatory evidence. An essential factor, materiality, as enumerated in *Butler*, is no longer applicable. *See Coe v. State*, 683 S.W.2d 431, 438 (Tex.Crim.App.1984). O'Rarden's third point of error should be overruled.

In his fourth point of error, O'Rarden contends that the trial court erred in overruling his motion for mistrial because of the late presentation of exculpatory evidence. He makes reference to his denial of effective use of the exculpatory evidence as argued in point of error three.

In order to preserve a complaint for appellate review, a party must have presented the trial court a timely request, objection, or motion. TEX.R.APP.P. 52(a). To be timely, the request, objection or motion must be made as soon as the ground becomes apparent. *See Thompson v. State*, 691 S.W.2d 627, 635 (Tex.Crim.App.1985).

O'Rarden became aware of Dr. Ashworth's physical examination, showing no symptoms of physical abuse, on the first day of trial. After a day's recess, he called DHR worker Jones as his first witness. During a recess in Jones's testimony, O'Rarden's counsel apparently spoke with Dr. Ashworth. He was permitted to present Dr. Ashworth's testimony to the jury prior to Jones concluding her testimony. At the conclusion of the doctor's testimony, he made no motion or request of the trial court. After Dr. Ashworth's testimony, O'Rarden recalled Jones and presented five additional witnesses, including himself, prior to urging his motion for a mistrial based on the tardy disclosure of exculpatory evidence. Due process requires O'Rarden to urge his remedy when the ground becomes apparent. *See Thompson*, 691 S.W.2d at 635. Due process does not permit him to pursue his original strategy, and then, at any point that he elects, obtain a mistrial. Point of error four should be overruled.

Under due process, remedies were available to O'Rarden. He did not move for a continuance in writing. He did not timely move for a mistrial. Since the jury heard the exculpatory evidence, I am not persuaded that a different result was a reasonable probability. Finding no reversible error in any of O'Rarden's points of error, I would affirm the judgment of the trial court.