**Jermaine Earl KNOX, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 01–98–00449–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 12, 2000.

Jake Perret, Houston, for appellant.

Carol M. Cameron, John B. Holmes, Houston, for State.

Panel consists of Justices MIRABAL, TAFT, and DUGGAN.[1]

---

1. The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

## OPINION

MIRABAL, Justice.

A jury found appellant, Jermaine Earl Knox, guilty of aggravated robbery. The jury assessed punishment at 11 years confinement. We affirm.

In his sole point of error, appellant asserts the trial court erred in not allowing appellant to recall a witness for further cross-examination, in violation of appellant's constitutional right of confrontation.

## Background

At approximately 8:45 a.m. on February 8, 1997, Sergeant J. Saldivar of the Houston Police Department, Robbery Division, spotted a maroon, four-door vehicle in the parking lot of a Houston shopping center near Highway 290. In this shopping center was a Blockbuster Video Store (Blockbuster Video). The vehicle had darkly tinted windows and no license plate. Saldivar saw the silhouette of two individuals inside the vehicle. Suspecting a robbery in progress, Saldivar requested backup. Officer D. Meza of the Houston Police Department responded to Saldivar's request and set up surveillance in an alley behind Blockbuster Video.

As time passed, the vehicle moved closer to the front entrance of Blockbuster Video. The vehicle was positioned facing Highway 290. At the same time, a Blockbuster Video manager (complainant) and his coworker left Blockbuster Video to make a bank deposit. Appellant jumped from the front passenger's side of the vehicle and ran toward the two Blockbuster Video employees. Appellant pointed a gun at them and demanded their money. Appellant grabbed from complainant a bag containing both cash and checks totaling $4,900. With the bag in hand, appellant ran back to the vehicle and re-entered the front passenger's side. The vehicle, already facing Highway 290, sped off toward it. As the vehicle fled the parking lot, Officer Meza observed, through an open window, appellant in the front passenger's seat.

A pursuit ensued. During the pursuit, appellant jumped from the vehicle and ran toward an apartment complex. Meza got out of his car and chased appellant. Despite searching throughout the apartment complex, Meza could not find appellant. Appellant's driver's license, however, was discovered on the ground of a nearby house.

Unrelenting, the driver of the vehicle continued to drive. Another police officer, A. Rendon of the Houston Police Department, maintained the pursuit. Eventually, the driver of the vehicle, Sean Douglas, pulled over and was arrested. After his arrest, Douglas was transported to the apartment complex where appellant had disappeared. There, Saldivar presented appellant's driver's license to Douglas who identified appellant as the passenger. The same day, complainant identified appellant from a videotaped lineup. Douglas gave a written statement about the robbery. Along with appellant, Douglas was charged with aggravated robbery.

## Right of Confrontation

During its direct-examination of Douglas, the State used the written statement, which Douglas gave after his arrest, to refresh Douglas's memory. During his testimony, Douglas described the vehicle and detailed the events leading to the robbery. Douglas also identified appellant as the vehicle's passenger. Douglas, however, denied participating in the robbery or having prior knowledge of it. Douglas claimed to have driven appellant to Blockbuster Video so appellant could collect money from someone who owed him. According to Douglas, appellant got out of the vehicle, approached a "white guy," and "jerked something out of his hand." Douglas reported he saw a gun and "bank bag" for the first time after appellant returned to the vehicle. At this point, testified Douglas, he realized appellant had committed robbery. Scared, Douglas "took off." During the pursuit and not wanting to go to jail, appellant "jumped

out of the car.". Douglas continued to drive, but later pulled over for police who arrested him. Despite the protest of innocence, Douglas was charged with aggravated robbery. Appellant cross-examined and recross-examined Douglas.

The next day, the State introduced testimony from Officer Saldivar about the procedures involved in his obtaining Douglas's written statement. Appellant then cross-examined Saldivar about the statement. After his cross-examination of Saldivar, appellant asked to recall Douglas, whom appellant had already cross-examined and recross-examined the previous day, for further cross-examination. According to appellant, the State had offered Saldivar's testimony, showing the written statement was timely and voluntary, to bolster Douglas's credibility. In response, appellant wanted to further cross-examine Douglas about the statement to impeach Douglas's credibility, which appellant believed the State had just bolstered. Specifically, appellant wanted to show that, had the State believed Douglas was not involved in the robbery, as Douglas expressed in the statement, the State would not have charged Douglas as an accomplice. Objecting, the State argued evidence of the statement was already before the jury. Further, contended the State, appellant had the opportunity during prior testimony to use the statement for impeachment purposes.

The record shows that Douglas had testified the day before, and then he left the courthouse. He was not under subpoena as a witness in the case. The clerk attempted to locate Douglas or his attorney, but was not able to reach either one. The trial court ruled that the trial would continue, and appellant could make his bill of exceptions, which he did.

In a single point of error, appellant claims the trial court erred in not allowing appellant to recall Douglas for further cross-examination, in violation of appellant's constitutional right of confrontation.

■ The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. U.S. CONST. amend. VI; *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Similarly, the Texas Constitution provides that, in all criminal prosecutions, the accused shall be confronted with the witnesses against him. TEX. CONST. art. I, § 10.

■ Implicit in the right of confrontation is the right of cross-examination. *Davis*, 415 U.S. at 315, 94 S.Ct. at 1110. The accused is accorded great latitude in showing witness bias or motive to falsify testimony. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex.Crim.App.1996); *Hodge v. State*, 631 S.W.2d 754, 758 (Tex.Crim.App. 1982). The extent of cross-examination, however, is limited. *Lopez v. State*, 18 S.W.3d 220, 222 (Tex.Crim.App.2000); *Hoyos v. State*, 951 S.W.2d 503, 510 (Tex. App.—Houston [14th Dist.] 1997), *aff'd*, 982 S.W.2d 419 (Tex.Crim.App.1998). In imposing reasonable limits on cross-examination, the trial court must carefully consider, on a case-by-case basis, the probative value of the evidence and weigh it against the risks of admission. *Id.* The potential risks include undue prejudice, embarrassment or harassment of a witness, misleading of the jury or confusion of the issues, presentation of cumulative evidence, or undue delay or waste of time. *Id.*

■■ The trial court's decision to limit cross-examination is not subject to reversal absent a clear abuse of discretion. *Love v. State*, 861 S.W.2d 899, 903 (Tex. Crim.App.1993). Whether the trial court abused its discretion depends on the facts of the case. *Id.*

■ In the present case, Douglas could not be located and further efforts to find Douglas would have caused delay in the trial proceedings. Immediately after the judge denied appellant's request to delay the trial until Douglas could be present,

both sides rested and closed. Appellant had questioned Douglas about the written statement during cross-examination the previous day. Further, when the trial court asked if the statement was inconsistent with Douglas's testimony, appellant acknowledged Douglas's statement did not differ from what Douglas had testified to previously. Thus, appellant's proposed evidence would not have added any new information for impeachment purposes. The trial court could have reasonably concluded that such evidence was already before the jury and therefore was needlessly cumulative. Although the witness's credibility was an issue critical to appellant's defense, we cannot say, in light of the record, the trial court abused its discretion.

We acknowledge the cases cited by appellant that support broad cross-examination of witnesses. *See Love,* 861 S.W.2d at 904; *Craig v. State,* 594 S.W.2d 91, 95–96 (Tex.Crim.App.1980); *Ikeda v. State,* 846 S.W.2d 519, 520 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). However, these cases are distinguishable from the case before us. In *Love,* appellant was not allowed to recall a witness for further cross-examination, despite offering new information directly contradicting the witness's prior testimony and discrediting the reliability of an intoxilyzer test. 861 S.W.2d at 903–904. The Court of Criminal Appeals found the trial court erred in refusing to allow the defendant to fully cross-examine a witness. *Id.* at 904. The Court held appellant was not attempting to introduce cumulative evidence. *Id.* The proposed evidence was not repetitive of prior testimony even though counsel had conducted a thorough cross-examination the previous day. *Id.* Rather, it was new information for impeachment purposes. *Id.* Unlike *Love,* however, the proposed evidence in this case was repetitive of prior testimony. Therefore, the trial court was within its discretion to limit further cross-examination and committed no error. Furthermore, the witness in this case could not be located, whereas in *Love,* the Court noted there would be no undue delay in the trial proceedings because the witness was in the courthouse and available to testify. *Id.*

In *Craig,* appellant argued the trial court erred in refusing to allow him to recall and cross-examine two witnesses. 594 S.W.2d at 95. After the two witnesses testified on direct examination, appellant announced to the court he had no questions for the witnesses at that time. *Id.* Later, appellant tried to recall one of the witnesses to the stand for cross-examination. *Id.* Objecting, the State argued appellant had waived his right to cross-examination because he failed to question the witness immediately after the State's direct-examination. *Id.* Further, the State argued that, because appellant had subpoenaed the witness, it made the witness a defense witness even though the State had placed the witness on the stand, and appellant had no right to recall him. *Id.* According to the Court of Criminal Appeals, the trial court, misled by the State's arguments, erred in refusing to allow appellant to recall the witnesses for further cross-examination. *Id.* However, no reversible error occurred because there was no bill of exception showing what the witness's testimony would have been on cross-examination. *Id.* at 96. Unlike *Craig,* appellant in this case adequately developed the record in his offer of proof. Based on the record, the proposed evidence would not have added anything new to prior testimony.

In *Ikeda,* appellant complained the trial court erred in not allowing him to redirect questions to a witness. 846 S.W.2d at 520. During appellant's trial, the witness testified he committed the crime with someone other than appellant. *Id.* The witness was cross-examined by the State concerning a prior plea and stipulation. *Id.* In this plea, the witness had entered into a stipulation that he had committed the crime with appellant. *Id.* On redirect-examination, appellant tried to show the witness had pled to the stipulation not for its truth, but as a requirement by the State. *Id.* The Four-

teenth Court of Appeals held appellant should have been allowed to inquire on redirect about the answers obtained by the State during cross-examination, in order to clarify any wrong inferences the jury might draw. *Id.* Unlike *Ikeda*, the appellant in this case had no new information to offer the jury that would clarify any wrong inferences. Rather, appellant's proposed evidence was mere repetition of prior testimony.

The trial court did not abuse its discretion in this case. Accordingly, we overrule appellant's sole point of error.

We affirm the judgment.

Justice TAFT concurring.

TAFT, Justice, concurring.

I concur in the disposition of appellant's point of error on the merits, but I write separately to address the State's threshold preservation argument, which I suggest is dispositive. The State contends the trial court did not refuse to allow appellant to recall Douglas, but that any error in not granting a motion for continuance was not preserved for review because the motion was oral, while the statute requires that it be written.

As the majority opinion notes, Douglas had not been subpoenaed. Likewise, he had not been instructed to remain available or on call. It was neither the State's fault, nor the trial court's fault, that Douglas was not available for recall by appellant. Under these conditions, the trial court could only be faulted, if at all, for denying appellant's oral motion for continuance. However, the statutes governing motions for continuance require that these motions be verified and written. *See* TEX. CODE CRIM.P.ANN. arts. 29.03, 29.06, 29.08, 29.13 (Vernon 1989). Because appellant's motion for continuance was not in writing, he presents nothing for review. *See Flores v. State*, 789 S.W.2d 694, 698 (Tex. App.—Houston [1st Dist.] 1990, no pet.).

Two cases have carved out an exception to the rule that motions for continuance must be written. *See Petrick v. State*, 832 S.W.2d 767, 770–71 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *O'Rarden v. State*, 777 S.W.2d 455, 459–60 (Tex.App.— Dallas 1989, pet. ref'd). The exception only applies, however, when the circumstances surrounding the denial of an oral motion for continuance demonstrate a denial of the rudiments of due process. *Petrick*, 832 S.W.2d at 770. Both *Petrick* and *O'Rarden* involved egregious prosecutorial misconduct resulting in reversible error. This case does not, as the majority opinion shows by its disposition.

Furthermore, the reason for carving out an exception to the plain statutory requirements no longer exists. The exception arose during the heyday of fundamental error, a doctrine that allowed appellate courts to address unpreserved reversible error. Now that ineffective assistance of counsel provides easy circumvention of the contemporaneous objection rule, there is no longer a need for either fundamental error or the exception carved by *Petrick* and *O'Rarden*.

Appellant's point of error presents nothing for review, and we should overrule it on that basis. Because the majority opinion does not, I can only respectfully concur in its result.