**Opinion filed October 17, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00280-CR

_____

### THE STATE OF TEXAS, Appellant

### V.

### JENNA LYNNE MORALEZ, Appellee

**On Appeal from the County Court at Law**

**Hays County, Texas**

**Trial Court Cause No. 093821**

### MEMORANDUM OPINION

After the jury found Jenna Lynne Moralez guilty of driving while intoxicated, she filed a motion for new trial on three grounds: (1) the State failed to timely disclose *Brady*[1] material concerning one of the investigating officers; (2) the trial court erred in admitting as evidence a post-arrest video (State's Exhibit

---

[1]*Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that a prosecutor has an affirmative duty to turn over material exculpatory evidence).

No. 2); and (3) the trial court erred in denying her motion for a directed verdict. The trial court granted the motion for new trial on the first two grounds.

In the first point of error, the State argues that Appellee did not preserve the *Brady* challenge, that the material was not *Brady* material, and that Appellee suffered no harm. In the second point of error, the State argues that the trial court did not err in admitting State's Exhibit No. 2 into evidence. And, in the third point of error, the State argues that the trial court did not err in denying Appellee's motion for a directed verdict. We affirm.

*Background Facts*

Two patrol officers with the City of San Marcos responded to a car accident involving a Lexus and a large Ryder truck. Officer Paul Stephens was the first officer on the scene, and Officer Lee Harris arrived shortly thereafter. The State listed Officer Harris as the only witness for the trial. During the trial, Officer Harris testified that Appellee appeared to be intoxicated, that he administered the standardized field sobriety tests, that Appellee failed the tests, and that he then arrested her and took her to jail.

Appellee filed a comprehensive pretrial motion to suppress evidence. In particular, Appellee asked the trial court to suppress the field sobriety tests and the post-arrest oral statements made by Appellee. Officer Harris was the only witness at the pretrial hearing. He testified that Appellee did not pass the horizontal gaze nystagmus (HGN) test or the walk-and-turn test. During cross-examination, Officer Harris admitted that, before administering the HGN test, it is important for an officer to ascertain whether the person has recently suffered a head injury.

Officer Harris agreed that, depending on the severity of the head injury, the head injury could invalidate the tests. Officer Harris further agreed that he had noted in his report that Appellee told him she had suffered a recent concussion. The report was written after the arrest. Officer Harris did not remember asking

2

Appellee about a head injury and did not remember whether she made the statement to him after he arrested her. In the pre-arrest video, Appellee told Officer Harris that she had received a head injury a night or two earlier. As to the breathalyzer test, Officer Harris said that Appellee first told him she would take the test, then said she would not, then said she would, and finally said she would not.

Because Appellee did not know of the information concerning the veracity of Officer Stephens, Appellee's attorney, during the hearing on the motion to suppress, concentrated primarily on the possible effects of Appellee's head injury on the field sobriety tests. The trial court denied the motion to suppress.

During the trial, it became evident from Officer Harris's testimony and from the videos that the actions and statements of Officer Stephens made Appellee extremely angry. Officer Harris said that Officer Stephens was the primary officer at the accident scene. Although Officer Harris initially stated that the two officers agreed that Officer Harris would investigate whether Appellee was driving while intoxicated and Officer Stephens would investigate the accident, it became evident through Officer Harris's testimony and the videos that Officer Stephens participated in interrogating Appellee and that his attitude and actions upset her. Officer Harris admitted that Appellee was polite to him but reacted adversely to questions by Officer Stephens. Officer Harris testified that a university officer was also there, but he did not record that officer's name as a witness. Officer Harris had been a police officer approximately a year and a half when he became involved in this investigation.

The State offered Officer Harris's in-car videos into evidence. The first video, State's Exhibit No. 1, concerns the actions pre-arrest; the second video, State's Exhibit No. 2, concerns Appellee when she was in the backseat of Officer Harris's patrol car after she was arrested. Both videos were viewed by the

3

jury. Officer Harris testified that Appellee's attitude changed "180 degrees from the time before she [was] arrested to after she [was] arrested."

It is not clear from the record how the defense learned about the purported *Brady* material concerning Officer Stephens. The only indication in the State's brief is that, "[d]uring the afternoon lunch break, the defense objected to the *Brady* Notice's lack of detail in regards to issues with Officer Paul Stephens." The record does not contain a *Brady* notice by the State. At some point near the end of the State's case, the State advised the defense as to the reasons why Officer Stephens was not a witness. The discussion between the State and the defense was not recorded.

When the jury returned from lunch, the State called Fred Weber as a witness to explain the State's position concerning Officer Stephens. Weber is an assistant criminal district attorney for Hays County. Weber testified that Officer Stephens had been investigated by internal affairs sometime in the past because Officer Stephens's credibility had been called into question. He added that the criminal district attorney's office had made an independent investigation and concluded that it was not "going to use [Officer Stephens] as a witness where he was an investigating officer." Weber read the following letter concerning Officer Stephens that the criminal district attorney, Sherri Tibbe, sent to Howard Williams, chief of the San Marcos Police Department, on June 25, 2010:

> Dear Chief Williams:
>
> It has recently come to our attention Officer Paul Stephens has been reinstated by the arbitrator to his position as a police officer with the San Marcos Police Department. Officer Stephens was terminated by the Department for not being truthful on two occasions and for excessive use of force.
>
> We have both an ethical and legal obligation to disclose this conduct to any defense attorney in any case in which he is a potential

4

witness. Please be advised that due to his history for dishonesty, our office will not call this officer as a witness in any case and will not be able to prosecute cases in which he is an investigating officer.

The honesty and integrity of a law enforcement officer are essential in the prosecution of a criminal case. Our office must be able to vouch for the credibility of officers who testify on behalf of the State of Texas. As a result of Officer Stephen[s]'s conduct[,] we are unable to do so.

Sincerely,

Sherri Tibbe
Criminal District Attorney
Hays County, Texas

The letter was marked as State's Exhibit No. 4 and admitted into evidence. During cross-examination by the defense, Weber acknowledged that the State had disclosed the letter to the defense only a few minutes earlier.

Officer Harris then finished his testimony, and the State rested. The defense made a motion for a directed verdict, which was denied. The defense began its case by calling Appellee as a witness.

Appellee testified that she told Officer Harris that, the night before or two nights before the accident, she had suffered a concussion when she was "around a disagreement"; she was pushed and hit her head on a table. She explained that she had mental health issues (depression, extreme anxiety, and ADD), that she normally took various medicines for those issues, that she had been under a doctor's care, and that, at the time of the accident, she could not afford to keep seeing the doctor and could not afford to buy her medicines. Appellee stated that she normally took Zoloft for depression and that she had been diagnosed for extreme anxiety and ADD in 2005.

Appellee acknowledged that she has anger problems when not on her medicines and that Officer Stephens had refused to listen to her explanation of how the accident happened. Appellee had tried to explain how the Ryder truck came into her lane and sideswiped her car and how the damage to her car supported her version. According to Appellee, Officer Stephens did not want to hear her version of the accident, and that made her extremely angry. She became frustrated with Officer Stephens before Officer Harris arrived at the scene.

Appellee admitted that she was driving the Lexus that night on a public road in Hays County, but denied that she was intoxicated. After the defense rested and both sides argued, the jury returned with a guilty verdict. Subsequent to the trial, the defense filed a motion for new trial.

*The Motion for New Trial*

It is significant that the judge who held the hearing on the motion for new trial had also presided at the trial. Another judge heard the pretrial motion to suppress and denied the motion. In the court's findings of fact from the motion-for-new-trial hearing, the court found that Officer Stephens was the primary officer at the scene, that he directed Officer Harris to deal with the alleged driver of the car, and that Officer Stephens did not file a report. During the trial, the State's sole witness, Officer Harris, testified as to the professionalism and investigative prowess of Officer Stephens. The State did not address or correct this statement or the impression that Officer Stephens was a reputable person.

The court found that, during a chamber conference, it was revealed that the prosecuting attorney had been instructed that Officer Stephens was not to be called as a witness. Ultimately, the State revealed that Officer Stephens had been deemed "dishonest" and that the State had adopted a policy of not calling Officer Stephens as a witness and of refusing to prosecute cases where Officer Stephens was an

6

investigator. In its findings of fact, the court referred to State's Exhibit No. 4, the letter that the State produced during the trial.

The court further found that the trial court had sought to correct the nondisclosure problem "with the remedial measure of introducing the letter authored by the Hays County District Attorney." The court found that the remedial measure was not sufficient and that the nondisclosure prior to the trial prevented defense counsel from being able to adequately prepare and present to the jury a defense best suited for the charged offense.

The court further found that the nondisclosure of the *Brady* material affected the pretrial denial of the motion to suppress and the trial, resulting in the Appellee being denied a fair trial. The court stated that defense counsel may have been forced to counter the issues by putting his client on the stand.

In its conclusions of law under the first issue, the court reviewed *Brady* and concluded that the State had failed to timely disclose evidence favorable to Appellee that was sufficient to undermine confidence in the outcome of the proceeding. The failure of the State to disclose the information prevented defense counsel from preparing and presenting a defensive theory best suited for the charge. The court then stated that, based on its findings of fact and conclusions of law, Appellee was entitled to a new trial in the interest of justice.

The court had watched the postarrest video (State's Exhibit No. 2) of Appellee and noted that Appellee was seen and heard to be agitated, angry, repeatedly spitting, and repeatedly saying racial slurs. In its findings of fact on the second issue, the trial court noted that Officer Stephens appeared in the video. His "proximity to the Defendant and her change of attitude was played out on the video yet the State failed to address who the Officer was or his reputation in violation of [*Brady*]." The court concluded that the video held little evidentiary value and "most likely was not proffered as such." The court then also granted the new trial

7

on the basis that, if the State had introduced the *Brady* evidence before the pretrial suppression hearing, the trial court would have granted the motion to suppress the postarrest video. Therefore, the nondisclosure of the *Brady* material resulted in the "admission of prejudicial evidence that was a material error that likely injured Defendant's rights."

We note that the State has not challenged the trial court's findings of fact on appeal. As mentioned, the judge who heard the motion for new trial was the judge who presided at the trial.

*Standard of Review*

For more than one hundred and twenty years, trial judges in Texas have had the discretion to grant new trials in the interest of justice. *State v. Gonzalez*, 855 S.W.2d 692, 694–95 (Tex. Crim. App. 1993) (new trial granted "to present witnesses that were not presented at the time of sentencing"). The trial judge's decision to grant or deny a defendant's motion for new trial is reviewed only for abuse of discretion. *State v. Herndon*, 215 S.W.3d 901, 906 (Tex. Crim. App. 2007). That discretion is not unbounded or unfettered. A trial judge has discretion to grant or deny a motion for new trial "in the interest of justice," but "'justice' means in accordance with the law." *Id.* at 907.

Errors that would not inevitably require reversal on appeal may form the basis for the grant of a new trial if the trial judge concludes that the proceeding has resulted in "a miscarriage of justice." The test for abuse of discretion is a question of whether the trial court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate an abuse of discretion. *Id.* at 907–08.

The Court of Criminal Appeals in *Herndon* stated that a trial court would not generally abuse its discretion in granting a motion for new trial if the defendant

8

(1) articulated a valid legal claim in his motion for new trial, (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim, and (3) showed prejudice to his substantial rights under the standards in Rule 44.2 of the Texas Rules of Appellate Procedure. A defendant is not required to establish reversible error as a matter of law before the trial court may exercise its discretion in granting a motion for new trial, but the defendant must demonstrate that his first trial was seriously flawed and that the flaws adversely affected his or her rights to a fair trial. *Id.* at 909.

*Analysis*

At the time of the hearing on Appellee's motion for new trial, Appellee did not have the typed reporter's record. Counsel for Appellee, however, offered a brief factual statement of the trial and commented that part of the evidence supporting the motion was off the record. Appellee's counsel discussed the letter from the Hays County Criminal District Attorney concerning the veracity of Officer Stephens and also stated that the defense learned at trial that a university police officer was also at the scene who may have observed the actions of Officer Stephens at the scene. Counsel stated that the State had not, to date, revealed the identity of the university police officer.

The State did not dispute Appellee's statements as to what had occurred at trial or the court's findings of fact. The State argued that Appellee had waived the *Brady* issue by not requesting a continuance and had received the information in time to use it effectively at trial. The State further argued that any evidence from uncalled witnesses was not material because such evidence "did not go to any of the elements of the offense."

In its appellate brief, the State first argues that the *Brady* violation is moot because Appellee did not preserve error by requesting a continuance. But Appellee was not required to preserve any error for appeal because she was the prevailing

9

party in the trial court. The trial court granted her motion for new trial. *Herndon*, 215 S.W.3d at 904, 911. As in *Herndon*, the State is the appellant.

Appellee's defense was (1) that she had suffered a concussion a day or two before that should have prevented Officer Harris from relying on the HGN test and the walk-and-turn test and (2) that Officer Stephens's aggressive actions and statements to Appellee triggered her mental problems and resulted in the very prejudicial postarrest video of her in the backseat of Officer Harris's patrol car.

In reading Officer Harris's testimony, it is clear that he did not approve of Officer Stephens's tactics but would only say that he and Officer Stephens "operate in different ways." Officer Harris acknowledged that, during Officer Stephens's confrontation with Appellee in the video, Officer Stephens told her, "I'll file a false report on you. That's a felony for your statements out here about how this accident happened." Officer Harris also acknowledged that, after Appellee's arrest, Officer Stephens was filling out the forms for impounding her car and said to Appellee, "One day you're going to be in front of a jury and you're going to look like a racist. What's that going to look like, right?" Officer Harris agreed that Officer Stephens was angry at the time.

The State argues that there was no *Brady* violation. We disagree. Under *Brady*, a prosecutor has an affirmative duty to turn over material exculpatory evidence. Favorable evidence includes both exculpatory evidence and impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985); *O'Rarden v. State*, 777 S.W.2d 455, 458 (Tex. App.—Dallas 1989, pet. ref'd). Evidence is material if there is a reasonable probability that, if it had been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *O'Rarden*, 777 S.W.2d at 458.

The judge hearing the motion for new trial found that the State failed to timely disclose evidence concerning Officer Stephens, the primary investigating officer in this case, and that the State's offering of the letter from the criminal district attorney to the police chief was insufficient to cure the State's failure to turn over favorable, material exculpatory evidence. The judge concluded that, had defense counsel known of Officer Stephens's problems, defense counsel probably would have been successful in his pretrial motion to suppress the very prejudicial postarrest video. The trial court concluded that the admission of that prejudicial evidence was a material error that likely injured Appellee's rights.

We agree that the video is very prejudicial, and we cannot say that it was not a principal factor in persuading the jury to convict Appellee. In final argument and in its rebuttal, the State encouraged the jury to look at the video again. Without the video, it appears the State had a difficult case. There is a reference during Officer Harris's testimony that, prior to trial, the administrative law judge did not suspend Appellee's license.

Appellee was entitled to know the results of the investigations of Officer Stephens on a timely basis before going to trial. Officer Stephens had been terminated by the Department for not being truthful on two occasions and for excessive use of force. Although Officer Harris was careful in his answers on cross-examination, the record reflects that Officer Stephens bullied and badgered Appellee that night until she lost her temper after her arrest. The record does not provide sufficient information as to whether that was a pattern of how Officer Stephens dealt with suspected offenders.

Officer Harris acknowledged that Officer Stephens was angry that night. Officer Harris said that he had high respect for Officer Stephens, but admitted that the two officers "operated differently." Appellee has a point in arguing that the

11

*Brady* evidence concerning Officer Stephens would have been useful in an attempt to impeach Officer Harris.

As stated in *Herndon*, a trial court normally will not abuse its discretion in granting a motion for new trial if the defendant (1) articulated a valid legal claim in his motion, (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim, and (3) showed prejudice to his substantial rights under the Rules of Appellate Procedure. A defendant need not establish reversible error as a matter of law before the trial court may exercise its discretion in granting a motion for new trial. *Herndon*, 215 S.W.3d at 909. Appellee met these requirements.

The judge granting the motion for new trial was of the opinion that the postarrest video was more prejudicial than probative. We agree. The State's first and second points of error are overruled. Although we do not reach the State's third point of error, we refer the State and Appellee to our recent decision in *White v. State*, No. 11-12-00071-CR, 2013 WL 5278509 (Tex. App.—Eastland, Sept. 19, 2013, no pet. h.).

The trial court did not abuse its discretion in granting the motion for new trial.

### This Court's Ruling

We affirm the order of the trial court.

TERRY McCALL

October 17, 2013          JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.