Melvin E. BUTLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–82–00492–CR.

Court of Appeals of Texas,
Dallas.

Oct. 20, 1983.

Discretionary Review Granted
Feb. 29, 1984.

Robert Udashen, Dallas, for appellant.

Henry Wade, Dist. Atty., Jeffrey B. Keck, Asst. Dist. Atty., for appellee.

Before STEPHENS, GUILLOT and ROWE, JJ.

ROWE, Justice.

Appellant was convicted of murder. His punishment, enhanced by a jury finding of two prior convictions, was assessed at life in the Texas Department of Corrections. Appellant presents seven grounds of error. After reforming the judgment to cure one ground of error, we overrule the other grounds and affirm.

In his first ground of error appellant complains that his constitutional rights to due process were violated by failure of the State's Attorney, after due request, to disclose certain exculpatory evidence, to-wit: police discovery of the suspected murder weapon and scientific tests conducted upon it. A timely Brady motion having been granted by the trial court, we must decide whether appellant was entitled to these disclosures under these progeny of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which he cites, such as *Crutcher v. State,* 481 S.W.2d 113 (Tex. Crim.App.1972), or whether the State properly withheld disclosure under those progeny of *Brady* which it cites, such as *Crawford v. State,* 617 S.W.2d 925 (Tex.Cr.App. 1980) (*en banc*) *cert. denied,* 452 U.S. 931, 101 S.Ct. 3067, 69 L.Ed.2d 431 (1981). Important to our determination are both the posture of the case without this evidence and the nature of the evidence which was not disclosed.

Following appellant's conviction, his attorney learned that the State's Attorney had received information before trial that police had discovered a knife in connection with the case. The knife was supposedly found on the roof of a building near the scene of the crime but bore no discernible fingerprints. The State's Attorney also had been told by his medical witness that blood found on the knife matched the blood of the deceased.

The chief witness for the State, Mary Louise Johnson, long time girlfriend of appellant, testified that when the deceased and appellant began a fight in her apartment one night she immediately fled outside and saw nothing that occurred inside, but thereafter did see the deceased fleeing the apartment and being pursued by appellant who said, "Nigger, I will kill you." Both the deceased and appellant then disappeared behind the apartment building. Deceased was later found on the ground behind the apartment building bleeding to death from a stab wound in the chest. Johnson testified she saw no knife that night and never saw appellant with any weapon in his hands. No blood was found inside her apartment. She said she did not initially tell the police the true story, because appellant told her to lie if asked because he did not want to go back to the penitentiary.

The only other witness called by the State for its case in chief was the Dallas County Medical Examiner, Dr. Charles Petty. Dr. Petty testified to two wounds on the deceased's body: (1) an incised wound on the tip of the fourth finger, left hand, of a type which occurs when a person attempts to ward off attack by a sharp instrument; and (2) a stab wound on the back, just inside the left shoulder blade, deep enough to have opened the aorta and caused death. The latter wound was about one half inch in length and had one blunt or dull edge and one sharp edge, such as would be made by a kitchen knife.

Testifying in his own defense, appellant admitted he got into a fight with deceased inside Johnson's apartment and defended himself with a kitchen knife which he had taken shortly before from others engaged in a fight in a neighboring apartment. Although he did hit or cut the deceased with the knife and got blood on his own hands, he did not know the location of any wounds

on the deceased's body. He denied following the deceased from the apartment or threatening to kill him. Appellant admitted that after others discovered the deceased near death from a stab wound, Mary Johnson's sister, Shirley, took the knife from appellant and threw it on the roof of the apartment building.

The only fact witness called by appellant was Henry Johnson, no relation to the State's witness, Mary Louise Johnson. Henry Johnson testified that after the homicide Mary Louise Johnson lived at his home in the same room with the appellant for over a month and did not appear to be afraid of appellant.

Appellant's Brady motion generally sought evidence or any information known to the State's Attorney which would be favorable to appellant on the issue of his guilt or innocence, but did not specifically mention the murder weapon. It did specifically seek any exculpatory evidence tending to affect adversely the credibility of any State's witness and exculpatory evidence resulting from any scientific test conducted in the case.

With the above as predicate, we now address the legal issue presented by Brady and its progeny. In this connection we know first that *Brady* does not require a State's Attorney to open his complete files or regurgitate all information to which he may personally be privy. Our justice system merely directs the State's Attorney to honestly and fairly evaluate such evidence for due process purposes when disclosure on constitutional grounds is requested. The factors to be considered are the evidence's "favorable character" for the defense *and* the "materiality" of the evidence as to the defendant's guilt. *Moore v. Illinois*, 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972). Further, the mere possibility that evidence might help the defense or otherwise affect the outcome of the trial does not establish its materiality in the constitutional sense; rather, when evaluated in the context of the entire record, to require its disclosure the evidence must be such as to "create a reasonable doubt [about the

defendant's guilt] that did not otherwise exist." *U.S. v. Agurs*, 427 U.S. 97, 113, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976).

Although no precise test for determining materiality has yet been formulated, when the above general principles governing the constitutional aspects of disclosure are applied here we conclude that appellant's rights to due process were not violated by the State's failure to disclose information it had concerning the knife in question. It is apparent from the record that appellant was aware that the murder weapon was a kitchen knife. The fact that the knife was a kitchen knife and not some other kind ordinarily carried by persons "looking for trouble" cannot be considered exculpatory in view of the evidence that appellant admittedly brought the knife to the scene of the crime concealed on his person as would a person "looking for trouble." We disagree with appellant's contention that if the knife's history subsequent to the murder date had been known to appellant, the credibility of certain witnesses might have been impeached. This contention is too speculative to merit consideration on appeal, especially where there is no showing that any witnesses playing a crucial role as to guilt were capable of being so impeached. *Cf. Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967) (where the withheld information directly impeached the complainant in a rape case). We find in the record no justification for the claim that such information would have been useful in reducing significantly the value of available eye-witness testimony, or that the conduct of the trial was otherwise unfairly distorted by appellant's inability to use such evidence. Neither can we accept appellant's argument that he was entitled to have this evidence before deciding whether he should take the stand. The lack of fingerprints on the knife and the positive results of tests linking blood on the knife to the blood of deceased do not pertain in any meaningful way to defense strategy helpful to establishing appellant's innocence, because such lack of fingerprints did not tend to prove that someone other than appellant

had wielded the knife. Assuming the hearsay report that the knife was found on the roof could be confirmed, the relevance of such to appellant's guilt does not appear significant enough to likely change the outcome of the trial. If in hindsight, appellant now assesses his chances of exoneration to be better had he not taken the stand, this assessment can not fairly be made to hinge on the non-disclosure of the evidence in question. Evidence withheld by the prosecutor cannot be regarded as exculpatory within the *Brady* rule on the speculative ground that if the defendant had known about it he might have adopted a different strategy at the trial. Appellant's first ground of error is overruled.

In his second ground of error appellant contends that because the testimony raising self-defense also raised the defense of necessity, the trial court erred in not instructing the jury on the law of necessity.[1] We disagree. Appellant contends in his brief that in this case the law of necessity and the law of self-defense overlap, and that it was necessary for him to use deadly force to defend himself because the deceased threatened him with deadly force. In a murder case, however, where self-defense becomes the "immediately necessary" conduct, article 9.22 is rendered inapplicable. Such conduct is excluded under subparagraph (3) of that article because of the legislative purpose appearing in subparagraph (2) of article 9.32 [2] respecting the use of deadly force in defense of the person.

Any other result would circumvent the "retreat" requirement of Article 9.32 and thus thwart the legislative purpose to impose a higher standard where the use of deadly force is sought to be justified. Appellant's second ground of error is overruled.

In his third ground of error appellant contends the trial court committed reversible error by refusing to include in the charge that particular instruction concerning the burden of proof on self-defense requested by appellant. The trial court did charge the jury on self-defense and correctly placed the burden of proof. When read as a whole the charge which was given is substantially comparable to that requested by appellant. Harm to appellant is not shown and reversal is not required. TEX. CODE CRIM.PROC.ANN. art. 36.19 (Vernon 1981).

Appellant's next three grounds (four through six) complain of inadequacies in the court's charge to the jury at the punishment phase. Because no objections to the charge were made, the assigned errors are claimed to be fundamental. Two separate contentions that the terms "final conviction" and "jurisdiction" require definitions fail not only because they are without merit but also because no arguments are advanced and no authorities are cited in support as required by TEX.CODE CRIM. PROC.ANN. art. 40.09(9) (Vernon Supp. 1982–1983), so nothing is presented for our review. *McWherter v. State*, 607 S.W.2d

1. TEX.PENAL CODE ANN. § 9.22 (Vernon 1974) provides:
   Conduct is justified if:
   (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;
   (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law prescribing [1] the conduct; and
   (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.
   [1] So in enrolled bill; probably should read "proscribing".

2. TEX.PENAL CODE ANN. § 9.32 (Vernon 1974) provides:

   A person is justified in using deadly force against another:
   (1) if he would be justified in using force against the other under Section 9.31 of this code;
   (2) if a reasonable person in the actor's situation would not have retreated; and
   (3) when and to the degree he reasonably believes the deadly force is immediately necessary:
      (A) to protect himself against the other's use or attempted use of unlawful deadly force; or
      (B) to prevent the other's imminent commission of aggravated kidnapping, murder, rape, aggravated rape, robbery, or aggravated robbery.

531, 536 (Tex.Cr.App.1980). The contention that the charge does not properly apply the law to the facts of the case also fails. All essential elements concerning the enhancement paragraphs are recited in the charge. A like charge was held sufficient when given at the guilt/innocence phase, *Simmons v. State,* 622 S.W.2d 111, 116 (Tex.Cr.App. 1981). · The same test for fundamental error in a guilt/innocence charge is applicable to the charge at the punishment phase. *See Lujan v. State,* 626 S.W.2d 854 (Tex.App.— San Antonio 1981, p.d.r. ref'd). Appellant's fourth, fifth, and sixth grounds of error are overruled.

In appellant's final ground of error he complains that the trial court erred in including a finding in the judgment that the "defendant herein used or exhibited a deadly weapon, to wit: a firearm, during the commission of said offense." The jury in this case made no specific finding that a deadly weapon was used, although the indictment alleges that the offense was committed using "a knife, a deadly weapon," and the charge also includes mention of "a knife, a deadly weapon," in its application of the law to the facts. We conclude that the finding was erroneous in absence of an affirmative finding by the trier of fact. *Ruben v. State,* 645 S.W.2d 794, 798 (Tex. Cr.App.1983); *Barecky v. State,* 639 S.W.2d 943 (Tex.Cr.App.1982). This court has the power, however, to reform a judgment as the law and nature of the case require. TEX.CODE CRIM.PROC.ANN. art. 44.24(b) (Vernon Supp.1982–1983). Accordingly, this judgment is reformed by deleting from it the following: "The court finds that defendant herein used or exhibited a deadly weapon, to-wit: a firearm, during the commission of said offense." (This recitation appears following the asterisk inserted above the defendant's notice of appeal in the judgment.) *Barecky,* 639 S.W.2d at 945.

As reformed, the judgment is affirmed.