Affirmed and Memorandum Opinion filed August 30, 2007








Affirmed and Memorandum Opinion filed August 30, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00408-CR

_______________

 

JAMES HOWARD FITCH, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 176th
District Court

Harris County, Texas

Trial Court Cause No. 930,419

                                                                                                                                               


 

M E M O R A N D U M  O P I N I O N

Appellant,
James Howard Fitch, raises five issues in this appeal from his conviction for
aggravated assault.  In appellant=s first four issues, he contends the
evidence is legally and factually insufficient to support the jury=s finding that he possessed the
culpable mental state and the jury=s rejection of his self-defense
claim.  In appellant=s fifth issue, he contends he received ineffective assistance
of counsel. Because our disposition is based on clearly settled law, we issue
this memorandum opinion and affirm.  See Tex. R. App. P. 47.4.[1] 








I.  Background

On
September 21, 2002, Tabitha Kokoska and Chrissy Sweeney went to  Dick=s bar in Houston.  During the
evening, appellant approached them several times and asked for a ride home.  He
appeared intoxicated, and they thought he was Aannoying.@  Tabitha, the driver, refused his
request because she did not know him.  The women exited the bar when it closed
at 2:00 a.m.  Clifton Whitley and Gary Sayers were also leaving the bar and
started a conversation with the women.  In the parking lot, appellant again
approached the women and repeatedly asked for a ride.  Clifton and Gary told
appellant the women would not give him a ride.  During this confrontation, the
women slipped away to Tabitha=s car and left the premises.  It is undisputed that, a few
minutes later, appellant struck Clifton and Gary each once in the face/head
area with a large, heavy, glass beer mug.  However, the trial testimony
differed materially regarding the events triggering appellant=s actions. 

Although
Tabitha and Chrissy did not see appellant strike Clifton and Gary, both women
characterized appellant as the aggressor during the initial part of the
confrontation.  They testified Clifton and Gary calmly asked appellant to leave
the women alone because they did not want to give him a ride.  Appellant became
more aggressive and angry with each request.  The men did not touch or threaten
appellant.

According
to the testimony of Clifton and Gary, they quietly and politely told appellant
the women did not want to give him a ride and suggested he leave. Appellant
repeatedly yelled that it was Anone of [their] business.@  At one point, appellant lunged
toward Clifton, who said he did not want to fight.  In contrast, Clifton did
not flinch or lunge at appellant or threaten him.  Eventually, appellant turned
to walk away, so the men also turned to leave.  Then, each man was suddenly
struck and fell to the ground.








Vincente
Martinez, a doorman at the bar, testified he could not hear the confrontation
at issue, but he saw appellant strike both men with the mug.  Although Martinez=s attention may have been briefly
diverted from the confrontation, he did not see Clifton and Gary lunge at,
touch, or threaten appellant. 

Appellant=s testimony conflicted with the
accounts presented by the State=s witnesses.  Appellant agreed he approached the women in the
parking lot and asked for a ride.  According to appellant, Clifton insisted the
women would not give appellant a ride, and Clifton was agitated until the women
convinced him to calm down.  Appellant explained to Clifton that he Adidn=t do anything@ to the women.  Subsequently, Clifton
became sarcastic, taunted appellant, and threatened to Achoke the life out of [his] little
skinny scrawny ass@ and Akick [his] ass.@  Appellant responded that he was not
afraid of Clifton, although he was actually afraid of both men together. 
Clifton lunged or flinched at appellant.  Appellant thought Clifton planned to
grab or hit him, so appellant Aautomatically just reacted@ by striking Clifton with the mug. 
Gary stepped toward appellant saying, Ayou shouldn=t have done that, now I=m going to have to . . .@  In mid-sentence, appellant struck
Gary with the mug.  Appellant thought he would be Ajumped@ by both men and did not have an
opportunity to retreat.  He ran away after striking the men.

Clifton
testified that the blow Apretty much shattered@ all nerves and bone on the left side
of his face.  Medical records confirm he sustained fractures of the lateral
left orbital rim and zygomatic arch Awith displacement.@  A plastic surgeon inserted titanium
plates around Clifton=s eye, which will remain in place the rest of his life to
maintain the bone structure.  He will also require another surgery to replace
some Afat@ around the eye.  He still bears a
scar from a laceration to the eye area.  He experienced blurred vision for
several months after the incident, but sustained no lasting vision damage. 
Gary also required medical attention.

Appellant
was charged with aggravated assault of Clifton Whitley.  A jury found him
guilty and sentenced him to five years= confinement.








II.  Sufficiency of the Evidence

We will
address appellant=s first four issues together.  In his first and third issues,
he contends the evidence is legally and factually insufficient to support the
jury=s finding that he committed
aggravated assault.  In his second and fourth issues, he contends the evidence
is legally and factually insufficient to support the jury=s implicit rejection of his
self-defense claim.

A.        Standard of Review 

In
considering a legal-sufficiency challenge, we review all evidence in the light
most favorable to the finding to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt.  King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  In
examining a factual-sufficiency challenge, we view all evidence in a neutral
light and set aside the verdict Aonly if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.@ Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997) (quoting Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996)).  Before we may reverse for factual insufficiency,
we must first conclude with some objective basis in the record, that the great
weight and preponderance of the evidence contradicts the jury=s verdict.  Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). 








The jury
was instructed to determine whether appellant committed aggravated assault by
(1) intentionally or knowingly causing bodily injury to Clifton by using or
exhibiting a deadly weapon, namely a glass mug; or (2) intentionally or knowingly
causing serious bodily injury to Clifton by striking him with a glass mug.  See Tex. Pen. Code Ann. '' 22.01(a)(1), 22.02(a)(1),(2) (Vernon
Supp. 2006).  We may uphold the verdict if the evidence is sufficient to
support a finding that appellant committed aggravated assault under either
alternative method.  See Kitchens v. State, 823 S.W.2d 256, 258
(Tex. Crim. App. 1991).  Nevertheless, as explained below, we conclude the
evidence is sufficient to support a finding that appellant committed the
offense through both methods.

The jury
was also instructed regarding self-defense pursuant to Texas Penal Code section
9.32.  A person is justified in using deadly force against another:

(1) if he
would be justified in using force against the other under Section 9.31;[2]

(2) if a
reasonable person in the actor=s situation
would not have retreated;  and

(3) when
and to the degree he reasonably believes the deadly force is immediately
necessary: 

(A) to protect himself against the
other=s use or attempted use of unlawful
deadly force; . . .

Tex.
Pen. Code Ann. ' 9.32 (Vernon 2003).  The defendant
bears the burden of producing some evidence to support his self‑defense
claim.  See Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App.
2003).  However, once self‑defense is raised, the State bears the burden
of persuasion to disprove the defense.  Id.  The burden of persuasion
does not require production of evidence; rather, the State is required only to
prove its case beyond a reasonable doubt.  Id.  Self‑defense is a
fact issue to be determined by the jury, which is free to accept or reject it. 
Saxton v. State, 804 S.W.2d 910, 913B14 (Tex. Crim. App. 1991).  When the jury
finds the defendant guilty, there is an implicit finding against the defensive
theory.  See Zuliani, 97 S.W.3d at 594; Saxton, 804 S.W.2d
at 914.

 B.       Analysis








Appellant
does not challenge the findings that he used a deadly weapon and Clifton
sustained Abodily injury@ or Aserious bodily injury.@[3]  Rather, the gist of appellant=s complaint is that he lacked the
requisite culpable mental state and acted in self-defense. Assault by causing
bodily injury is a result-oriented offense.  Ford v. State, 38 S.W.3d
836, 844 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d).  Therefore, the State must  prove
the defendant caused the result with the requisite culpable mental state.  See
id.   AA person acts intentionally, or with intent, with respect to . . . a
result of his conduct when it is his conscious objective or desire to . . .
cause the result.@  Tex. Pen. Code Ann.
' 6.03(a) (Vernon 2003).  AA person acts knowingly, or with
knowledge, with respect to a result of his conduct when he is aware that his
conduct is reasonably certain to cause the result.@  Tex.
Pen. Code Ann. ' 6.03(b) (Vernon 2003).  A culpable mental state may be
inferred from circumstantial evidence such as acts, words, and conduct of the
accused, surrounding circumstances, the method of committing a crime, and the
nature of wounds inflicted on the victim.  See Guevara v. State, 152
S.W.3d 45, 50 (Tex. Crim. App. 2004); Hart v. State, 89 S.W.3d 61, 64
(Tex. Crim. App. 2002); Stadt v. State, 120 S.W.3d 428, 438 (Tex. App.CHouston [14th Dist.] 2003), aff=d, 182 S.W.3d 360 (Tex. Crim. App. 2005).








Appellant
contends he did not intentionally or knowingly injure Clifton because he  Ajust reacted@ when Clifton made threatening
statements and gestures towards him.  However, as sole judge of the credibility
of witnesses, the jury was free to believe the testimony from Tabitha, Chrissy,
Clifton, Gary, and Martinez, reflecting that Clifton did not make any
threatening statements or gestures, to which appellant Areacted.@[4]  See Jones v. State, 944 S.W.2d
642, 647B48 (Tex. Crim. App. 1996). 
Similarly, the jury was free to disregard appellant=s self-defense claim.                                                                       

Instead,
the jury reasonably could have inferred appellant intentionally or knowingly
caused, at least, bodily injury to Clifton because he was angry that Clifton
and Gary requested he leave the women alone.  Further, the jury could have
inferred appellant intentionally or knowingly caused serious bodily
injury because he struck Clifton in the face/head area with a large, heavy,
glass mug, using such force that Clifton was knocked onto one knee.  The jury
also could have inferred appellant knew the mug was sufficiently heavy to cause
serious bodily injury because he purchased it at the bar two months before the
incident and brought it during subsequent visits to obtain beer refills. 
Finally, the jury could have found intent or knowledge with respect to serious
bodily injury from the extent of Clifton=s wounds.

In sum,
the jury could have found the essential elements of the offense beyond a
reasonable doubt.  In addition, the verdict is not contrary to the great weight
and preponderance of the evidence.  Accordingly, we overrule appellant=s first four issues.

III.  Ineffective Assistance of Counsel








In his
fifth issue, appellant contends he received ineffective assistance of counsel. 
To prevail on an ineffective-assistance claim, an appellant must prove (1)
counsel=s representation fell below the
objective standard of reasonableness; and (2) there is a reasonable probability
that, but for counsel=s deficiency, the result of the proceeding would have been
different.  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984); Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  In considering an
ineffective-assistance claim, we indulge a strong presumption that counsel=s actions fell within the wide range
of reasonable professional behavior and were motivated by sound trial
strategy.  See Strickland, 466 U.S. at 689; Thompson, 9
S.W.3d at 813; Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994).  To overcome this presumption, a claim of ineffective assistance must be
firmly demonstrated in the record.  Thompson, 9 S.W.3d at 814.  In most
cases, direct appeal is an inadequate vehicle for raising such a claim because
the record is generally undeveloped and cannot adequately reflect the motives
behind trial counsel=s actions.  See Rylander v. State, 101 S.W.3d
107, 110B11 (Tex. Crim. App. 2003); Thompson,
9 S.W.3d at 813B14. When, as in this case, the record is silent regarding
trial counsel=s strategy, we will not find deficient performance unless the challenged
conduct was Aso outrageous that no competent attorney would have engaged in it.@  Goodspeed v. State, 187
S.W.3d 390, 392 (Tex. Crim. App. 2005); Jagaroo v. State, 180 S.W.3d
793, 797 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).

Appellant
contends his counsel performed deficiently in several respects:

A.        Purportedly Deficient Voir
Dire 

First,
appellant contends counsel asked confusing and global questions and failed to
address pertinent subjects during voir dire.  In particular, appellant asserts
counsel did not specifically ascertain whether panel members could consider the
full range of punishment or probation in an aggravated assault case.  Appellant
also asserts counsel did not determine whether any panel members had been crime
victims or were connected to law enforcement.








However,
at the outset of voir dire, the trial court extensively addressed various
pertinent subjects.  The trial court inquired about panel members= ability to consider the full range
of punishment and probation.  Subsequently, the State also addressed these matters. 
Further, the trial court asked whether panel members, based on personal
feelings or other factors, would automatically believe a police officer=s testimony.  This question elicited
a response from a panel member regarding family and friends in law
enforcement.  In addition, the trial court asked panel members to inform the
court if their ability to be fair might be affected by Asomething . . . that=s happened to you or someone else
that you know.@  The trial court gave an example of a previous juror who could not be
fair to a defendant charged with delivery of cocaine because a relative died of
a cocaine overdose.  Therefore, the trial court effectively addressed the
matters that appellant=s counsel did not discuss.  

Accordingly,
counsel may have exercised sound trial strategy by deciding not to repeat
subjects already addressed by the trial court and the State.  See Goodspeed,
187 S.W.3d at 391B93 (recognizing counsel=s failure to ask any voir dire
questions, including inquiries concerning consideration of full range of
punishment or probation, could have been legitimate trial strategy based on
counsel=s comments to panel that State had
fully addressed his concerns).  With respect to the subjects counsel did
address, some comments were fairly broad, and the panel seemed confused by
certain questions.[5]  However,
considering the extent of pertinent topics addressed in the entire voir dire,
counsel=s failure to be as specific and
articulate as possible did not render his performance Aso outrageous that no competent
attorney would have engaged in it.@  See id. at 392; Jagaroo,
180 S.W.3d at 797.[6]

B.        Failure to Make an Opening
Statement








Next,
appellant complains his counsel did not make an opening statement.  However,
counsel=s decision to refrain from making an
opening statement could have been a valid tactical decision because an opening
statement provides the State with a preview of defense strategy.  See Taylor
v. State, 947 S.W.2d 698, 704 (Tex. App.CFort Worth 1997, pet. ref=d); Standerford v. State, 928
S.W.2d 688, 697 (Tex. App.CFort Worth 1996, no pet.).  Appellant does not direct us to
any portion of the record containing an explanation for counsel=s decision.  Therefore, appellant has
not rebutted the strong presumption that counsel=s decision was based on sound trial
strategy.  Counsel=s failure to make an opening statement was not conduct Aso outrageous that no competent
attorney would have engaged in it.@  See Goodspeed, 187 S.W.3d at
392; Jagaroo, 180 S.W.3d at 797.

C.        Alleged Failure to
Adequately Prepare Appellant to Testify

Appellant
further contends his counsel failed to adequately prepare him to testify. 
However, this allegation is not a matter that appears in the record. 
Therefore, we reject appellant=s contention regarding this alleged deficiency.

D.        Introduction of Allegedly
Harmful Testimony

Appellant
also asserts his counsel elicited testimony from Clifton Whitley that bolstered
the State=s case and harmed appellant=s defense.  For instance, on
cross-examination of Clifton, appellant=s counsel established that Clifton
did not flinch at, or Amake a move@ toward, appellant during the incident.  In another instance,
appellant testified Clifton had taunted him by bragging that he owned better
cars than appellant, his family owned a large parcel of land, and he could Akick [appellant=s] ass@ without consequence because he knew
a Abouncer@ at the bar.  Subsequently, appellant=s counsel recalled Clifton.  In
response to counsel=s questions, Clifton denied making these taunts or that the
alleged statements were  true.  Appellant contends this testimony made him look
like a Aridiculous liar.@








However,
even if counsel were deficient by eliciting the above-cited testimony,
appellant has not shown a reasonable probability that, but for the deficiency,
the result of the trial would have been different.  As we have explained, the
overall testimony of Clifton and four other witnesses reflected appellant was
the aggressor and Clifton did not threaten him.  Further, the jury heard ample
evidence from which to evaluate the credibility of witnesses, including
appellant.  Accordingly, the record contained  significant evidence supporting
the jury=s verdict, even without the
above-cited testimony.[7]

E.        Failure to File Written
Motion for Continuance

Appellant
also contends his counsel was ineffective because he failed to file a written
motion for continuance when a witness was unavailable.  Counsel called an
Officer Clopton to testify, but the bailiff could not locate him.  After
another witness testified, counsel informed the trial court that Officer
Clopton had been subpoenaed.  The trial court responded that counsel needed to
rest if he had no more witnesses.  Counsel then rested without moving for a
continuance.

Appellant
cites no portion of the record indicating the substance of Officer Clopton=s potential testimony.  Thus, we do
not know whether the testimony would have been beneficial and material to
appellant=s defense.  Consequently, counsel may have strategized that obtaining the
officer=s testimony was not worth delaying
the trial.  Without a record demonstrating the substance of his potential
testimony, we cannot conclude counsel=s failure to file a written motion
for continuance was such outrageous conduct Athat no competent attorney would have
engaged in it.@  See Goodspeed, 187 S.W.3d at 392; Jagaroo, 180 S.W.3d at
797; see also King v. State, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)
(rejecting ineffective-assistance claim because counsel=s failure to present any defense
witnesses was irrelevant absent showing they were available and defendant would
benefit from their testimony).

 








F.        Failure to Request Charge
on Deadly Conduct

In
addition, appellant complains that his counsel failed to request a jury charge
on the alleged lesser-included offense of deadly conduct.  A person commits
misdemeanor deadly conduct Aif he recklessly engages in conduct that places another in
imminent danger of serious bodily injury.@  See Tex. Pen. Code Ann. ' 22.05(a), (e) (Vernon 2003). 
Appellant=s counsel requested a charge on Areckless aggravated assault@ based on appellant=s testimony that he Ajust reacted@ when he struck Clifton, but the
trial court denied the request.  See Tex.
Pen. Code Ann. '' 22.01(a)(1), 22.02(a) (providing aggravated assault by
causing bodily injury may be committed with Arecklessly@ culpable mental state).  Appellant
suggests this testimony also supported a charge on deadly conduct.  According
to appellant, counsel=s request demonstrates he was unfamiliar with the law on
deadly conduct.  We disagree. 

The
record is silent regarding the reason for counsel=s action.  Once the trial court
refused to submit Areckless aggravated assault,@ counsel may have decided to pursue
an Aall or nothing@ strategyCrequiring a conviction for aggravated
assault, as charged, or an acquittal based on self-defense.  See Wood
v. State, 4 S.W.3d 85, 87B88 (Tex. AppCFort Worth 1996, pet. ref=d) (recognizing that counsel=s employing Aall or nothing@ tactic by failing to request
lesser-included offense may be reasonable strategy). Therefore, even if
appellant were entitled to a charge on deadly conduct, absent an explanation
for counsel=s actions, we cannot foreclose the possibility his decision was reasonable
trial strategy.  Again, his action was not so outrageous Athat no competent attorney would have
engaged in it.@  See Goodspeed,
187 S.W.3d at 392; Jagaroo, 180 S.W.3d at 797.

G.        Failure to Request
Instruction on Necessity

Finally,
appellant asserts his counsel did not request an instruction on the defense of
necessity.  ANecessity@ is a justification defense to a criminal charge if: 








(1)  the
actor reasonably believes the conduct is immediately necessary to avoid
imminent harm;

(2) the
desirability and urgency of avoiding the harm clearly outweigh, according to
ordinary standards of reasonableness, the harm sought to be prevented by the
law proscribing the conduct;  and 

(3) a legislative purpose to exclude the justification
claimed for the conduct does not otherwise plainly appear.

Tex.
Pen. Code Ann. ' 9.22 (Vernon 2003).  However,
appellant was not entitled to an instruction on necessity because the conduct
at issue was use of deadly force and the jury was charged concerning
self-defense pursuant to Penal Code section 9.32.  See Tex. Pen. Code Ann. ' 9.32 (explaining law on use of
deadly force in self-defense).








When
deadly force in self-defense is the conduct that is allegedly Aimmediately necessary@ under section 9.22, the defense of
necessity does not apply.  See Butler v. State, 663 S.W.2d 492, 496
(Tex. App.CDallas 1983), aff=d, 736 S.W.2d 668 (Tex. Crim. App. 1987) (prescribing
this rule in a murder case);  Banks v. State, No. 14‑00‑00650‑CR,
2002 WL 27265, at *5 (Tex. App.CHouston [14th Dist.] Jan. 10, 2002, pet. ref=d) (not designated for publication)
(applying Butler rationale in aggravated assault case).  Specifically,
the third element of section 9.22 cannot be met because a legislative purpose
to exclude this justification appears in the Aretreat@ requirement of section 9.32.  See
Tex. Pen. Code Ann. '' 9.22(3), 9.32(a)(2); Butler,
663 S.W.2d at 496 (recognizing any other result would circumvent the Aretreat@ requirement and thwart the
legislative purpose to impose a higher standard where use of deadly force is
sought to be justified); Banks, 2002 WL 27265, at *5.  Therefore, when
an instruction on use of deadly force in self-defense is submitted, a defendant
is not entitled to an instruction on necessity.  See Butler, 663 S.W.2d
at 496; Banks, 2002 WL 27265, at *4B5.  Accordingly, appellant=s counsel was not ineffective by
failing to request an instruction on necessity.  See Young v. State,
991 S.W.2d 835, 839 (Tex. Crim. App. 1999) (holding counsel was not ineffective
for failing to request instruction on necessity where defendant was not
entitled to it); cf. Vasquez v. State, 830 S.W.2d 948, 950B51 (Tex. Crim. App. 1992) (finding
counsel ineffective for not seeking necessity instruction, which was the only
defense available to the defendant and presented at trial). 

In sum,
having rejected all of appellant=s arguments supporting his
ineffective-assistance-of-counsel claim, we overrule his fifth issue.

The
judgment of the trial court is affirmed.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed August 30, 2007.

Panel consists of Justices Frost,
Seymore, and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 

 









[1]  We initially dismissed appellant=s direct appeal for lack of jurisdiction because the
notice of appeal was untimely filed; however, the Court of Criminal Appeals
subsequently allowed an out-of-time appeal.  See Ex Parte Fitch,
No. AP‑75360, 2006 WL 708524 (Tex. Crim. App. March 22, 2006) (not
designated for publication).

  





[2]    Under section 9.31, with certain exceptions, a
person is justified in using force against another when and to the degree he
reasonably believes the force is immediately necessary to protect himself
against the other=s use or attempted use of unlawful force. See Tex. Pen. Code Ann. ' 9.31 (Vernon 2003).





[3]  In short, under one method of the offense, the jury
was required to find bodily injury and use of a deadly weaponCthe glass mug.  The other method required serious
bodily injury with no Adeadly weapon@
component.  A police officer testified the mug was a deadly weapon based on the
manner of use during this incident. The evidence reflects Clifton sustained not
only Abodily injury,@
but also Aserious bodily injury,@ based on the surgical insertion of permanent titanium plates required
to maintain his facial bone structure following the blow from the glass mug. 
See Tex. Pen. Code Ann. ' 1.07(a)(46) (Vernon Supp. 2006) (defining ASerious bodily injury@ to include Abodily injury . . . that causes . . . protracted loss
or impairment of the function of any bodily member or organ.@).





[4]   Appellant argues his version was credible because
he had no prior felony convictions, and Clifton and Gary drank more alcohol
than appellant on the night of the incident.  However, appellant cites no place
in the record where the jury heard that he lacked a felony record.  Regardless,
lack of a felony record would not militate that the jury believe his
testimony.  Further, the jury was free to consider the amount of alcohol
consumed by the witnesses when evaluating the weight to give their testimony.





[5]   Counsel=s
voir dire questions concerned several areas including burden of proof, the
reasonable-doubt standard, the concept that appellant was not required to
present evidence, the Aintentionally or knowingly@ element of the offense, whether panel members would
necessarily decide the mug was a deadly weapon or use of the mug in
self-defense was unreasonable, and panel members= general opinions about the criminal justice system.





[6]  Appellant cites San Roman v. State, 681
S.W.2d 872, 874B76 (Tex. App.CEl
Paso 1984, pet. ref=d), in which the court held the defendant received
ineffective assistance during his trial for aggravated rape.  However, in that
case, counsel=s voir dire was deficient in numerous respects.  See
id. at 874B75.  He not only failed to inquire about pertinent
subjects, including panel members=
ability to consider the full range of punishment or probation and whether panel
members had been victims of crime or had connections to law enforcement, but he
also antagonized panel members.  See id.  Further, the court
found counsel was ineffective based on the totality of the representation which
consisted of numerous deficiencies.  See id. at 874B76.  





[7]  Without supporting argument, appellant also simply
notes his counsel elicited testimony that Clifton still bears a scar on his
scalp and left eye area.  However, appellant has not shown this testimony was
necessarily harmful because it was undisputed Clifton has a scar as a result of
being struck by appellant.